IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREW E. HUNT,

    Petitioner,                                CASE NO. 2:09-cv-419
                                            CRIM. NO. 2:05-cr-102
v.                                               JUDGE WATSON

UNITED STATES OF AMERICA,

    Respondent.


### REPORT AND RECOMMENDATION

On May 28, 2009, petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. Respondent filed a return on July 7, 2009. On April 7, 2010, petitioner filed a motion to amend his petition to include a claim that he improperly was placed on post release control under the Ohio Supreme Court's decision in *State v. Singleton*, 124 Ohio St.3d 173 (2009), and the Ohio Adult Parole Authority and parole officer therefore illegally searched his residence, leading to the federal firearm charge upon which he was convicted. He also requested leave to amend his §2255 petition to include a claim of ineffective assistance of counsel based on his attorney's failure to raise this issue. The Court granted that motion on May 6, 2010, and directed respondent to file a response to the amended petition. A supplemental return was filed on July 6, 2010, and petitioner replied on August 9, 2010. The case is now before the Court on the original case file, the petition, as amended, the responses, and the reply. For the following reasons, it will be recommended that petitioner's motion be denied and that this case be dismissed.

## I. FACTS AND PROCEDURAL HISTORY

On April 14, 2005, petitioner was indicted by a federal grand jury and charged with a single count of possessing a firearm by a convicted felon, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). He subsequently filed a motion to suppress any statements made by him which were recounted in a state parole violation report, but that motion was denied by the Court on October 11, 2005. The case went to trial, and the jury returned a verdict of guilty on November 9, 2005. On July 18, 2006, this Court entered its Judgment and Commitment order sentencing petitioner to a term of imprisonment of 85 months.

Petitioner filed a timely appeal of his conviction and sentence. In an opinion filed on May 16, 2008, the Court of Appeals rejected all of petitioner's claims and affirmed the judgment. *See United States v. Hunt*, 278 Fed. Appx. 491 (6th Cir. May 16, 2008) (unpublished). Petitioner timely filed this motion to vacate on May 28, 2009.

The Court of Appeals summarized the facts of this case as follows:

> In August 2004, defendant Andrew E. Hunt was on parole from the Ohio Department of Rehabilitation and Correction, having been convicted of felonious assault in 1997. He resided with his wife and daughter in Columbus. Hunt was supervised by parole officer Jennifer Clemans. On August 25, 2004, acting on an informant's tip that Hunt was in possession of two firearms, Clemans assembled a team of fellow parole officers to conduct a search of Hunt's home.
>
> When the officers arrived at the Hunt residence, they were allowed in by Hunt's wife, Nichole. Andrew Hunt was in the shower. When he emerged from the shower, he had a gray towel wrapped around his waist. He asked and received permission to go to his bedroom to get dressed. When he finished dressing, alone behind the closed bedroom door, Hunt was escorted to a different room and the bedroom was searched. The officers found a loaded .38 caliber revolver and five loose rounds wrapped in a wet gray

2

towel on the bed. Hunt told Clemans that he didn't know about the gun. Nichole Hunt also disclaimed any knowledge of the gun. Hunt was placed under arrest for violating the conditions of his parole.

Six days later, on August 31, while Hunt remained in custody at the Franklin County Corrections Center, Clemans delivered and read a formal notification of release violation to him. Hunt was required to initial the form, responding to the charges that he possessed a firearm and possessed ammunition by either admitting, admitting with explanation, or denying the charges. As he initialed the form, Hunt told Clemans that "it wasn't his gun, that he was holding it for Will, and that Will had brought it to him like two weeks ago." Hearing tr., JA 103. Hunt was ultimately found to have violated the conditions of his parole and a 240-day prison term was imposed.

Six months later, on April 14, 2005, based on the above facts, defendant Hunt was indicted in the Southern District of Ohio, charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). Defendant moved to suppress any and all statements made by him during custodial interrogation because he had not been advised of his Miranda rights. Following an evidentiary hearing, the district court denied the motion, finding that, although Hunt had not been Mirandized, his statement to Clemans on August 31, 2004 was spontaneous, not the product of interrogation, and therefore not excludable.

Trial commenced on November 8, 2005. At the conclusion of a two-day trial, the jury found defendant guilty as charged. On July 14, 2006, defendant was sentenced to a prison term of 85 months.

*United States v. Hunt, supra*, at *493-94.

## II. THE PETITION AND AMENDED PETITION

In his initial petition, petitioner claims that his conviction and sentence should be vacated because he was not capable of forming the *mens rea* to willfully obstruct justice and that under the United States Sentencing Guidelines, Section 5G1.3, he is entitled to a corrected sentence. He acknowledges that neither of these claims was raised on appeal but

3

asserts that this failure was due to the ineffective assistance of counsel.  As noted above, the amended petition raises claims relating the Ohio Adult Parole Authority's search of his residence and the discovery of the firearm in question, as well as the ineffective assistance of counsel in failing to raise these issues previously.  Respondent contends that these claims are either procedurally defaulted or without merit.

### III.  CLAIM ONE

At sentencing, petitioner was given a two-point enhancement of his base offense level for obstruction of justice. That enhancement was based on the Court's conclusion that he perjured himself at the suppression hearing, as well as his initial false statement about the weapon which he made to his parole officer.  Through counsel, petitioner had objected to this enhancement, contending that his statement to his parole officer did not actually obstruct or impede the investigation into his crime, and that it was not established that he committed perjury during the trial.  Counsel also argued that the facts underlying this enhancement had not been found by the jury and that the Court therefore could not properly apply the enhancement. He raised some of these arguments on appeal, and they were rejected as being without merit.

In his first claim, petitioner notes that he was shot in the head on July 17, 1994, and that the bullet is still lodged in his brain.  He underwent extensive rehabilitation and thereafter acquired a number of criminal convictions.  He asserts that counsel should have argued to the Court that his memory loss and other residuals of his brain injury, he could not have formed the intent to commit perjury.  He further argues that counsel was

4

ineffective for not subpoenaing his medical records to support this claim.

Respondent argues that this claim lacks any evidentiary support. Respondent notes that the probation officer reviewed various medical records during the course of the presentence investigation, that the injury to petitioner occurred more than ten years before his federal indictment, and that during the course of the proceedings he exhibited no signs of any brain injury that would have affected his ability to form the intent to commit perjury or obstruct justice. Respondent also asserts that because there was, and is, no evidentiary support for this claim, counsel could not have been ineffective for failing to raise it.

The Court agrees with respondent's position. There was no evidence in the record, at the time petitioner was sentenced, which would have supported his claim that he did not have the mental capacity either to decide to lie to his parole officer, or to decide to tell a deliberate falsehood while testifying at proceedings in this Court. Petitioner has not supported his claim with any medical evidence which would either cast doubt on his ability to obstruct justice or commit perjury, or which, had it been discovered by counsel, would have led counsel to believe that an argument of this type should have been presented to the Court. Actual proof, and not simply unsupported allegations, is needed in order for a petitioner to make out even a *prima facie* case for relief under §2255. *See, e.g., Paters v. United States*, 159 F.3d 1043, 1051-52 (7th Cir. 1998). Here, the conclusory allegations made by petitioner about the effect of his brain injury have absolutely no support in the record, and on the record, even as supplemented by the petition, the Court would not have come to any conclusion other than that the enhancement was proper.

5

Therefore, petitioner's first claim is entirely without merit.

## IV.  CLAIM TWO

Petitioner's second claim arises under §5G1.3 of the United States Sentencing Guidelines.  That section of the Guidelines deals with the imposition of concurrent sentences or consecutive sentences.  It is, of course, advisory only, but it advises the court that in one specific situation - where "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction ... and that was the basis for an increase in the offense level for the instant offence" - the Court should adjust the sentence for "any period of imprisonment already served on the undischarged term of imprisonment" if the Bureau of Prisons would not provide credit for that term, and should run the term of imprisonment for the instant offense concurrently with the remainder of that term.  Otherwise, it is left to the discretion of the sentencing judge to decide whether to run the sentence wholly concurrently, partly concurrently, or consecutively to or with any other sentence.

Petitioner was given an eight-month sentence for violating his state parole by possessing the same weapon that led to his conviction in this Court.  He argues that he should have been given credit for this eight months because the Court determined that 85 months was the appropriate sentence for the crime, and that he got no credit from the Bureau of Prisons for the time he served in state custody.  Notwithstanding the fact that this argument would properly have been raised on direct appeal, responded has addressed it on its merits.  Respondent asserts that the Guideline did not require that credit be given

6

and, in fact, supported the imposition of a consecutive sentence.

Here, petitioner had already served his state sentence by the time his federal sentence was imposed. Consequently, there was no undischarged portion of a state sentence yet to be served, and §5G1.3 is not directly applicable. Simply put, the Court could not have run any portion of the federal sentence concurrently with the state sentence because that sentence had already expired.

Petitioner appears to be arguing that his sentence was in some way unreasonable because it did not take into account the fact that he had already served an eight-month sentence for the same conduct. However, the Court of Appeals specifically rejected petitioner's claim that his sentence was objectively unreasonable. Further, this Court was aware of the fact that petitioner had served a sentence for a parole violation in connection with his possession of the weapon at issue. A parole violation is a separate offense from possession of a firearm by a convicted felon, and it is appropriate for the state to punish a parole violator through a term of imprisonment. It is also appropriate for this Court to punish a felon who possesses a firearm independently of whether that possession did, or did not, constitute a parole violation. In essence, the parole violation was not a factor that this Court was required to take into account in choosing an appropriate sentence, and petitioner has not cited any authority to the contrary. Thus, his second claim is also without merit.

## V. THE ADDITIONAL CLAIMS

Petitioner's additional claims arise out of the alleged illegality of the search of his

residence during which the weapon was found. His argument is premised on a 2009 decision of the Ohio Supreme Court, *State v. Singleton*, 124 Ohio St. 3d 173 (2009), which held that "[f]or criminal sentences imposed prior to July 11, 2006, in which a trial court failed to properly impose postrelease control, trial courts shall conduct a de novo sentencing hearing" in order properly to impose that component of the sentence. *Id.*, syllabus, ¶1. Petitioner asserts that post-release control was never properly imposed in his case, so that the Ohio Adult Parole Authority never had the right to enter his home in order to conduct the search which led to the discovery of the firearm. He asserts that the Ohio Adult Parole Authority has acknowledged that he was wrongfully placed on post-release control because it was never made a part of his original sentence, and that the Parole Authority has been on notice since the Ohio Supreme Court decided *Woods v. Telb*, 89 Ohio St. 3d 504 (2000), that its practice of imposing post-release control on defendants who were not sentenced to such terms was unlawful. Finally, he asserts that his counsel was ineffective for failing to raise this issue at trial.

The primary difficulty with petitioner's Fourth Amendment claim - the assertion that the gun was the fruit of an unlawful search conducted in violation of the Fourth Amendment and that it should not have been admitted into evidence - is that such claims may not ordinarily be raised on collateral review. In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that because the Fourth Amendment's exclusionary rule exists not to suppress unreliable evidence, but rather to suppress reliable evidence in order to deter police misconduct, the rule should not be applied on collateral review unless the defendant

8

was denied a fair opportunity to litigate the claim as part of the initial criminal proceedings. Although *Stone* involved a case brought by a state prisoner who sought habeas corpus relief under 28 U.S.C. §2254, its rationale has been applied to claims brought by federal prisoners under 28 U.S.C. §2255. *See Brock v. United States*, 573 F.3d 497 (7th Cir. 2009); *United States v. Ishmael*, 343 F.3d 741 (5th Cir. 2003); *United States v. Cook*, 997 F.2d 1312 (10th Cir. 1993); *United States v. Hearst*, 638 F.2d 1190 (9th Cir. 1980); *Sexton v. United* States, 2001 WL 418726 (W.D. Va. March 26, 2001); *but see Baranski v. United States*, 515 F.3d 857 (8th Cir. 2008). Although there is no controlling decision from the Court of Appeals for the Sixth Circuit, at least one district court within this Circuit has applied *Stone* in the context of a §2255 petition. *See United States v. Chapman*, 2006 WL 2160967 (E.D. Mich. July 31, 2006). At least one other district court has implicitly recognized that *Stone* created a bar on raising Fourth Amendment claims directly in a §2255 petition, as opposed to raising the issue under the Sixth Amendment's guarantee of effective assistance of counsel. *See Rice v. United States,* 2010 WL 3222040 (N.D. Ohio February 4, 2010), *adopted and affirmed,* 2010 WL 3222035 (N.D. Ohio August 12, 2010) .

A secondary, but equally important, reason why the Court ordinarily cannot reach the merits of such a claim on collateral review is that the failure to raise the claim as part of the initial appeal of the conviction constitutes a procedural default. Any claim which is based on facts known or apparent on the record at the time of appeal must be raised on appeal or those claims are forfeited for purposes of collateral review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993). The

9

Fourth Amendment claim which petitioner asserts here is based on facts known to him at the time the direct appeal was filed - that is, he knew that his original state court sentence did not include any advice about post-release control - but he did not raise the issue on appeal, nor did he file a motion to suppress the fruits of the search, which is another procedural default. *See United States v. Merkosky*, 2008 WL 5169640 (N.D. Ohio December 9, 2008). The only way to overcome that default is to show cause for the default, such as ineffective assistance of counsel for failing to raise the claim at an appropriate time, and prejudice from that failure. *See, e.g., Elzy v. United States*, 205 F.3d 882 (6th Cir. 2000); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). Thus, for each of these two reasons, the Court will limit its analysis to the question of whether counsel performed ineffectively by failing to raise the search and seizure issue before trial or on appeal.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, n. 14 (1970). The standard for reviewing a claim of ineffective assistance is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.*, at 697.

The premise of petitioner's ineffective assistance of counsel claim is that it should have been apparent to counsel, in light of the Ohio Supreme Court's decision in *Woods v. Telb*, 89 Ohio St. 3d 504 (2000), that the Ohio courts either had, or would, rule that if a defendant is not given a sentence of post-release control by the trial judge, any term of control subsequently imposed by the Ohio Adult Parole Authority would be unlawful. In fact, Ohio law was anything but clear on this issue at the time petitioner's case went to trial in 2005, and his counsel cannot be faulted for not having raised this argument.

*Woods* addressed the following issue. In that case, the defendant had been sentenced in 1996 for a fifth-degree felony. Once he completed his jail term, the Adult Parole Authority placed him on three years of post-release control. Although the trial court's sentencing entry advised the defendant that he could be placed on post-release control and

11

that violations of that supervision could lead to imprisonment, the entry did not impose a specific term of post-release control. Defendant subsequently violated his post-release control and was sent back to prison on two separate occasions. He filed a petition for a writ of habeas corpus, arguing that the statute under which post-release control had been imposed, R.C. §2967.28, was unconstitutional. The Ohio Supreme Court disagreed, holding that the statute (which permitted the Adult Parole Authority to impose the term of post-release control) did not violate the separation of powers which exists between the executive and judicial branches of Ohio government, nor was the due process clause offended by its operation. The court reasoned that the power exercised by the APA under this statute was no different than the power it had exercised under the former statute which allowed the APA to determine the length of any parole term which an offender would serve, and that so long as the trial court advised the defendant at the time of sentencing that he or she would be subject to some term of post-release control, the imposition of such a term by the APA was lawful.

Four years later, in *State v. Jordan*, 104 Ohio St. 3d 21 (2004), the Ohio Supreme Court was faced with a related question, but one not raised by the facts in *Woods*. In *Jordan*, the Court had before it two defendants who had not been advised about post-release control at their sentencing hearings (although that possibility was described in the written entries that later were filed). In one defendant's case, post-release control was mandated by statute, while in the other case, it was discretionary. Both defendants appealed the sentences, and one appellate court struck the post-release condition from the sentence,

12

while the other remanded the case for resentencing. Upon further appeal, the Ohio Supreme Court held that, by statute, the sentencing judge was required to advise the defendant in either type of case about post-release control at the sentencing hearing, and that the failure to do so rendered the sentence void. The Court further held that in such cases, the proper remedy was to remand the case for resentencing.

*Jordan* was before the Ohio Supreme Court by way of direct appeal. The next case in the sequence of decisions on this issue, *Hernandez v. Kelly*, 108 Ohio St. 3d 395 (2006), involved the situation where the challenge to the sentence was made only after the defendant had been released from prison and then re-imprisoned as a parole violator. The trial court had failed both to advise the defendant about post-release control at the sentencing hearing and to incorporate such language into the sentencing entry. The Ohio Supreme Court held that the APA lacked the authority to impose post-release control due to these failures, and it ordered the defendant released from custody.

Apparently in response to these and other judicial decisions, the Ohio General Assembly enacted a new statute, R.C. §2929.191, effective on July 11, 2006, to address the problem. That statute provides that a court which failed to advise the defendant about post-release control at the time of sentencing could conduct a hearing and then file a corrected judgment entry at any time before the defendant was released from prison. In *State v. Singleton*, 124 Ohio St. 3d 173 (2009), the Ohio Supreme Court refused to give retroactive effect to this statute, and held that "for criminal sentences imposed prior to July 11, 2006, in which a trial court failed to properly impose postrelease control, the de novo

sentencing procedure detailed in decisions of the Supreme Court of Ohio should be followed to properly sentence an offender." *Singleton*, 124 Ohio St. 3d at 180.

Petitioner alleges that he was sentenced in 1997 in the state court and that the court did not (although it is not clear if the error occurred at the sentencing hearing or in the sentencing entry, or both) make post-release control a part of the sentence. He was released from prison in 2003. Apparently, he never received any kind of new sentencing hearing, and he asserts that he was released from post-release control in 2010 as a direct result of the Ohio Supreme Court's decision in *Singleton*. If these facts are true, it would appear that, under state law, the entirety of his post-conviction release was void. If that were so, the search of his residence, to the extent that it was premised entirely upon his being under post-release control, would have been unauthorized by state law.

The problem with this argument, at least to the extent that it is either saved from procedural default by ineffective assistance of counsel or serves as the basis for an independent claim of ineffective assistance, is that, until *Hernandez* was decided in 2006, the Ohio Supreme Court had never held that this type of claim could be raised in a collateral attack, such as a state habeas corpus petition, as opposed to on direct appeal. *Woods*, the earliest decision that petitioner cites, simply did not involve a trial court's failure to advise the defendant about post-release control; its holding was limited to the question of whether, if a defendant is properly advised (as the defendant in that case was), the APA violates either the separation of powers doctrine or due process by imposing the term of post-release control which was explained to the defendant at the sentencing hearing and

in the trial court's sentencing entry. *Jordan*, which was decided prior to the trial in this case, involved two defendants who raised the issue on direct appeal. Although these two cases, taken together, might have alerted counsel of the possibility that petitioner's term of post-release control was subject to collateral attack in the state court, and possibly (although this is by no means certain) also subject to collateral attack in this court by way of a motion to suppress, it was certainly not a foregone conclusion that either avenue of attack would have been successful in establishing the first requirement of a Fourth Amendment violation, namely an unconstitutional search and seizure. And, based on this record, it is not at all clear that the only basis for the search was petitioner's status as a parolee; rather, the agents who conducted the search were acting on a tip about petitioner's possession of a firearm and were admitted to his residence by his wife. Counsel could easily have concluded that the search was consensual, in which case the Fourth Amendment would not be implicated at all.

As the United States also points out in its response, another hurdle that petitioner would have had to overcome, had he filed a motion to suppress, is the decision in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court held that the fruits of a search which violates the Fourth Amendment need not be suppressed unless the searching officers either "were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. at 926. Although *Leon* involved a search conducted pursuant to a warrant, the Supreme Court has held that its principles are equally applicable to searches conducted pursuant to a statute

15

which authorizes warrantless searches and which is later held to be unconstitutional. In *Illinois v. Krull*, 480 U.S. 340, 349 (1987), the Court concluded that if an officer's reliance on such a statute is "objectively reasonable," the fruits of the search will not be suppressed.

The same analysis about whether counsel should have been aware of the possibility of having the search in this case declared unconstitutional based on the void nature of petitioner's post-release control applies to the question of whether agents of the Ohio Adult Parole Authority acted reasonably when (and if) they conducted a warrantless search of petitioner's residence based on their belief that, as a parolee, he was subject to such searches. At the time of the search, the Ohio Supreme Court had never held that a term of post-release control such as the one imposed on petitioner could be successfully challenged on collateral review; petitioner had never made such a challenge; his term of post-release control had never been set aside by any court; and the *Woods* decision had held that the post-control statute, R.C. §2967.28, was constitutional. Under those circumstances, even if counsel believed that the search was subject to attack in this Court, counsel could also have reasonably believed, based on *Leon* and *Krull*, that any motion to suppress would have had scant chance of succeeding. Further, for the same reasons, it is unlikely that the outcome of these proceedings would have been different had such a motion been filed or had the issue been pursued on appeal. Thus, petitioner cannot demonstrate prejudice, and his ineffective assistance of counsel claim fails on both prongs of the *Strickland* test. That being so, he has not established cause for the procedural default of his Fourth Amendment claim, nor has he separately established a Sixth Amendment claim based on ineffective

assistance of counsel. Consequently, he has not demonstrated a right to relief on the claims which were added to his petition by amendment.

## VI.  RECOMMENDED DISPOSITION

For all of the above reasons, it is recommended that petitioner's motion to vacate, set aside, or correct his sentence be **DENIED**.

## VII.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge
